IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE KEVIN VERNON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, ET AL.,<br><br>　　　　Defendants.　　　　　　　／ | No. C 07-01286 CRB<br><br>**ORDER** |

　　　　Defendants City and County of San Francisco and Officer George Perez move for partial summary judgment on Plaintiff Wayne Vernon's claims alleging violations of state law and the federal constitution arising from his arrest for public intoxication. Even viewing the evidence in the light most favorable to Vernon, Defendants are entitled to summary judgment on Vernon's claims for: (1) unlawful seizure in violation of § 1983; (2) excessive force insofar as that claim is predicated on Vernon's fall at the police station; (3) excessive force insofar as that claim is based on the Fifth, Ninth, and Fourteenth Amendments; (4) deliberate indifference; (5) malicious prosecution; and (6) assault. In addition, summary judgment is granted to the City on Vernon's § 1983 claims because Vernon has failed to set forth facts that would support Monell liability. Summary judgment is denied on Vernon's claim for false arrest in violation of state law and as to Officer Perez's invocation of qualified immunity.

**BACKGROUND**

At approximately 12:30a.m. on March 5, 2005, Duggan McDonnell – a bartender at Frisson Restaurant in San Francisco – placed a 911 call complaining that a heavy-set, African-American male measuring 5'9" or 5'10" and wearing a yellow Gore-Tex jacket and a yellow or white hat was intoxicated and physically harassing guests. See Bernard Decl. Exh. B. McDonnell told the 911 operator that the intoxicated guest was in the lounge by the bar and had refused to leave. See id.

Lieutenant Timothy Oberzeir of the San Francisco Police Department arrived at the restaurant at approximately 12:35a.m. See Bernard Decl. Exh. A. McDonnell met Lt. Oberzeir in front of the restaurant and indicated that the person who caused the disturbance was now across the street. See Oberzeir Depo. at 8:22-25; 10:2-9. Lt. Oberzeir then contacted the suspect, who turned out to be Plaintiff Vernon. Id. at 10:10-11. Lt. Oberzeir was impressed by Vernon's "obvious intoxication," as Vernon was slurring his speech, had a flushed face and watery eyes, and a strong odor of alcohol on his breadth. See Zaheer Decl. Exh. F at 4. At the time, Vernon – who weighed approximately 200-225 pounds – was wearing a yellow Gore-Tex coat, a hat, jeans, and tennis shoes. See Vernon Depo. at 65:16-21; 70:8-9; Zaheer Decl. Exh. F (San Francisco Police Department Incident Report). Vernon repeatedly stated that he "didn't do anything," but Lt. Oberzeir detained Vernon pending an investigation. See Oberzeir Depo. at10:23-11:10.

Lt. Oberzeir then spoke again with McDonnell to get more specifics about what had occurred. See id. at 12:5-10. Lt. Oberzeir learned that the restaurant did not want to press criminal charges. See id. at 14:22-25. In the meantime, other officers – including Sergeant Thomas Johnson and Defendant Officer George Perez – arrived with a police van. See id. at 11:23-24. After the investigation was complete, Vernon was placed under arrest for public intoxication in violation of California Penal Code § 647(f). See id. at 14:4-5.

According to Vernon, he left his nearby office between 6:30-7:00p.m. to have dinner with a co-worker at a nearby restaurant and bar called Grumpy's. See Vernon Depo. at 60:6-14. Vernon had one beer at Grumpy's, but no other alcoholic beverage. See id. at 62:6-10.

Vernon remained at Grumpy's until approximately 11:30p.m., and then returned to his office to pick up a gym bag. See id. at 65:2-7. Vernon was on his way to the Embarcadero BART station when he was detained by a police officer. See id. at 67:20-68:17. According to Vernon, he never entered Frisson that evening. See id. at 68:18-21.

Under Vernon's version of events, Officer Perez handcuffed him tightly and then threw Vernon – or "dragged" him – into the paddy wagon. See id. at 97:4-5. Vernon was slammed face-first onto the floor of the wagon. See id. at 100:23-101:4. Officer Perez then got onto Vernon's back and started pulling his arms perpendicular to his body, whilst Vernon cried "please don't break my arm" three times. See id. at 79:11-17; 97:5-11. Vernon blacked out because of the pain and because he was having trouble breathing. See id. at 106:25-107:3. Vernon's testimony conflicts with that of Sgt. Johnson, who represents that he – and not Officer Perez – handcuffed Vernon, and that Vernon was arrested without incident. See Zaheer Decl. Exh. F at 4; see also Perez Depo. at 18:2-23 (testifying that he did not put Vernon in the van).

The Incident Report reflects that Vernon was transported to Central Station for processing. See Zaheer Decl. Exh. F at 4. Officer Perez testified that he attempted to take Vernon's property off him for storage, but that Vernon became agitated and refused to comply. See Perez Depo. at 27:10-25. Vernon still smelled of alcohol and was slurring his speech. See id. at 28:5-7. Vernon began to sway on his feet, and then fell to his left onto the floor. See id. at 28:11-21. When asked if he was hurt, Vernon replied, "Hey, I am all right. My arm is a little sore." Id. at 29:12-19. Based upon Vernon's conduct at Central Station, Sgt. Johnson placed Vernon under arrest for delaying a peace officer in his official duties, in violation of California Penal Code § 148(a)(1).

After completing booking, Officer Perez and Sgt. Johnson transported Vernon to County Jail. See Perez Depo. at 40:3-6. On the way to County Jail, Vernon "blew up," and began yelling at the officers. See id. at 41:16-23. Upon arrival, Vernon told the officers that they broke his arm and that he planned to sue them. See id. at 42:17–22. Once inside the county jail, Vernon was seen by a triage nurse, and he complained about the pain in his arm

1   and he asked to see a doctor. See id. at 44:21-45:14. According to the medical records,
2   Vernon told the nurse that an officer broke his arm but was "uncooperative and
3   argumentative." See Zaheer Decl. Exh. G at 5. Vernon refused to take his jacket off so the
4   nurse could evaluate his arm. See id. The nurse recommended that the officers take Vernon
5   to San Francisco General Hospital because of Vernon's complaints, and they agreed. See
6   Perez Depo. at 53:1-10.

7   The first thing Vernon can recall after the van ride is arriving at SF General Hospital.
8   See Vernon Depo. at 113:7-10. According to the nurse who evaluated Vernon, he was
9   uncooperative, engaged in "outbursts," refused to answer questions, and had alcohol on his
10  breath. See Zaheer Decl. Exh. H at 9. An x-ray of Vernon's arm revealed two bone
11  fragments within the elbow joint, representing a possible fracture. See id. at 1. Medical
12  personnel gave Vernon Vicodin for the pain, put his arm in a splint, and recommended that
13  he follow up with an orthopedist. See id. at 14.

14  While in the hospital, a police officer allegedly entered Vernon's room and told him to
15  sign a citation, stating, "Sign this ticket. We'll let you go." Vernon Depo. at 120:2-3.
16  Vernon refused to sign the ticket because the officer refused to explain its contents. See id.
17  at 120-15-24. The officer also told Vernon, "[i]f you don't sign it, I'll say I was with them."
18  Id. at 120:11-12. As he was leaving the hospital, Officer Perez told Vernon, "[i]f you just
19  sign the ticket, we would have let you go." Id. at 122:12-13. The next morning, two officers
20  stopped by the hospital to take Vernon back to County Jail, where he remained until his
21  release. Id. at 124-:13-15.

22  Vernon was charged with public intoxication, delaying a peace officer in his official
23  duties, and resisting an officer in the performance of his duties. See Cal. Penal Code §§ 69,
24  148(a)(1), 647(f); see also Springman Decl. Exh. H (criminal complaint). The criminal
25  charges were ultimately dismissed for lack of evidence.

## STANDARD OF REVIEW

27  Summary judgment is appropriate "if the pleadings, depositions, answers to
28  interrogatories, and admissions on file, together with the affidavits, if any, show that there is

4

1  no genuine issue as to any material fact and that the moving party is entitled to a judgment as
2  a matter of law." Fed. R. Civ. P. 56(c).  A fact issue is "material" only if it could affect the
3  outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
4  248 (1986).  A fact issue is genuine if the evidence is such that a reasonable jury could return
5  a verdict for the nonmoving party. Id.

6       A principal purpose of the summary judgment procedure is to isolate and dispose of
7  factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The
8  party moving for summary judgment has the burden to show initially the absence of a
9  genuine issue concerning any material fact. See Adickes v. S.H. Kress & Co., 398 U.S. 144,
10 159 (1970).  This can be done by either producing evidence negating an essential element of
11 the plaintiff's claim, or by showing that plaintiff does not have enough evidence of an
12 essential element to carry its ultimate burden at trial. See Nissan Fire & Marine Ins. Co. v.
13 Fritz Companies, Inc., 210 F.3d 1099, 1103 (9th Cir. 2000).  Once the moving party has met
14 its initial burden, the burden shifts to the nonmoving party to establish the existence of an
15 element essential to that party's case, and on which that party will bear the burden of proof at
16 trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  To discharge this burden,
17 the nonmoving party cannot rely on its pleadings, but instead must have evidence showing
18 that there is a genuine issue for trial. See id. at 324.

19      Special rules of construction apply to evaluating summary judgment motions: (1) all
20 reasonable doubts as to the existence of genuine issues of material fact should be resolved
21 against the moving party; and (2) all inferences to be drawn from the underlying facts must
22 be viewed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc. v. Pac.
23 Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987).

**DISCUSSION**

25   I. False Arrest & Unlawful Seizure

26     In his second amended complaint, Vernon alleges that the method and mode of
27 Defendants' arrest resulted in both false arrest in violation of state common law and unlawful
28 seizure in violation of the Federal Constitution's Fourth Amendment. See Second Amended

5

1 Complaint (SAC) ¶¶ 30-37, 54-60.  Defendants move for summary judgment on both counts
2 for the same reason: the officers who arrested Vernon had probable cause to effectuate the
3 arrest.  However, in their briefing, Defendants conflate the two causes of action and fail to
4 recognize that the state and federal standards for "probable cause" are not coextensive.

### A. False Arrest

Under California law, the tort of false arrest "is merely one way of committing a false imprisonment." Martinez v. City of Los Angeles, 141 F.3d 1373, 1379 (9th Cir.1998) (citation and quotation omitted).  The elements of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, (3) for an appreciable period of time, however brief.  See Blaxland v. Commonwealth Director of Public Prosecutions, 323 F.3d 1198, 1205 (9th Cir. 2003).  California law protects a law enforcement officer from liability for false arrest where the officer, acting within the scope of his or her authority, either (1) effects a lawful arrest or (2) has reasonable cause to believe the arrest is lawful.  See Cervantes v. United States, 330 F.3d 1186, 1188 (9th Cir. 2003); Cal. Penal Code § 847.

Defendants argue that based on "the facts known to the peace officer at the time of arrest," Giannis v. City and County of San Francisco, 78 Cal. App. 3d 219, 224 (1978), Officer Perez and his colleagues had probable cause to believe that Vernon had committed numerous crimes, including public intoxication, disturbing the peace, interference with business, trespass, intimidation of customers, assault, and battery.  Vernon suggests that because he was only arrested for public intoxication, the Court should not consider whether there was probable cause to believe that he had committed the other crimes at Frisson. However, it is well-established that probable cause may exist for an arrest so long as there is some reasonable basis for believing that a crime has been committed, even if the officers ultimately arrest the suspect for a different crime.  See Blankenhorn v. City of Orange, 485 F.3d 463, 473 (9th Cir. 2007).  "Probable cause need only exist as to any offense that could be charged under the circumstances."  Id. (quotation and citation omitted).

6

The more troubling problem for Defendants is that under California law, a warrantless arrest for a misdemeanor is lawful only if the officer has reasonable cause to believe the misdemeanor was committed in his presence. See Johnson v. Dep't of Motor Vehicles, 36 Cal. App. 4th 1209, 1216 (1995); Cal. Penal Code § 836(a).  Defendants may not therefore justify the arrest on misdemeanors – including trespass, battery, assault, and intimidation of customers – that did not occur in their presence. See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 920 (9th Cir. 2001).

Based on the evidence proffered by Defendants, the only misdemeanor that arguably occurred in the officers' presence is the misdemeanor for which Vernon was arrested: public intoxication. That statute provides that it is unlawful for a person to be "found in any public place under the influence of intoxicating liquor . . . in a condition that he . . . is unable to exercise care for his . . . own safety or the safety of others. . . ." Cal. Penal Code § 647(f). There is no dispute that Vernon, who was arrested on the street, was found in a public place. The question for summary judgment is therefore whether any reasonable juror could conclude based on the facts that Vernon was not so intoxicated that he was unable to care for his own safety or the safety of others.

In the Court's view, it is a close call whether summary judgment can be denied and there are persuasive arguments why no reasonable juror could believe Defendant's story. From the officers' point of view, an independent witness – who, because of his job, likely had experience identifying the signs of intoxication – called the police to report a drunk patron allegedly harassing guests at Frisson. It was reasonable for the officers to assume – both based upon the bartender's identification and the matching description – that Vernon was indeed the suspect. Further, the officers observed that Vernon displayed symptoms of intoxication, symptoms later confirmed by medical personnel.

In counterbalance to that weighty evidence, Vernon has offered merely his own testimony that he had only one drink and was not at Frisson the night of the events in question, which if true would undercut the credibility of the officers' testimony that Vernon was visibly intoxicated.

7

Although the Court is tempted to grant summary judgment on Vernon's claim, to do so would be improper in light of the conflicting evidence. See Levin v. United Airlines, 158 Cal. App. 4th 1002, 1018-19 (2008) ("If the facts that gave rise to the arrest are undisputed, the issue of probable cause is a question of law for the trial court. When, however, the facts that gave rise to the arrest are controverted, the trial court must instruct the jury as to what facts, if established, would constitute probable cause.") (internal citation omitted). If the Court resolves all reasonable doubts in Vernon's favor, then it is plausible that a reasonable juror could conclude that Vernon only had one drink and that, therefore, the police should have realized there was not probable cause to arrest him for public intoxication. Accordingly, the motion for summary judgment on Vernon's claim of false arrest is denied.

### B. Unjust Seizure

Based upon the same conduct supporting his claim for false arrest, Vernon alleges that Officer Perez violated his Fourth Amendment rights by arresting him without probable cause. It is well established that arrests without probable cause violate the Fourth Amendment, as applied to the states through the Fourteenth Amendment, and thus give rise to a cause of action for damages under § 1983. See McKenzie v. Lamb, 738 F.2d 1005, 1007 (9th Cir. 1984).

The inquiry under the Fourth Amendment diverges from the inquiry under state law because "[t]he requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment." Barry v. Fowler, 902 F.2d 770, 772 (9th Cir. 1990). As a result, whether Officer Perez and his colleagues were present when Vernon committed the alleged misdemeanors is not relevant. Id. The question is rather whether there was probable cause to effect the warrantless misdemeanor arrest under the Fourth Amendment. See Allen v. City of Portland, 73 F.3d 232, 236 (9th Cir. 1995). "Probable cause exists when, at the time of arrest, the agents know reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense." Id. at 237 (quotation and citation omitted). Where the source of police information about a suspect is an eyewitness to the crime,

8

probable cause to arrest the suspect may exist even in the absence of an independent showing of the reliability of the source so long as the witness is fairly certain of the identification. See United States v. Hammond, 666 F.2d 435, 439 (9th Cir. 1982).

Because Vernon's federal claim does not turn on the presence or absence of peace officers, the claim must fail if there was probable cause to believe that Vernon had committed any offense. There clearly was probable cause to believe that Vernon had committed crimes inside Frisson and no reasonable juror could conclude otherwise. The officers had an eyewitness identification, a detailed description that matched Vernon, and the officers found Vernon just across the street from Frisson. Even if Vernon was arrested as the result of a freakish misidentification, the arrest was plainly reasonable in light of facts known to the police at the time. Because no reasonable juror could conclude that the police lacked probable cause to believe that Vernon had committed an offense – including intimidation of customers – summary judgment must be granted to Defendants on Count Six for unlawful seizure. See Barry v. Fowler, 902 F.2d 770, 773 (9th Cir. 1990).

II. Excessive Force

Defendants move for partial summary judgment on Vernon's claim of excessive force on two grounds. First, Defendants seek summary judgment insofar as Vernon intends to predicate the claim on his fall at Central Station. Second, Defendants move for summary judgment on the excessive force claim insofar as it is based on the Fifth, Ninth, and Fourteenth Amendments. Vernon does not directly contest either request, and the motion for partial summary judgment is so granted.

### A. Excessive Force Based on Fall

Defendants anticipate that Vernon will forward two alternate theories of excessive force liability at trial, one based on Officer Perez's assault in the van and one based on Vernon's fall at Central Station. Defendants move for summary judgment insofar as Vernon plans to rely on the fall, arguing that Officer Perez's failure to catch Vernon from falling down cannot constitute excessive use of force as a matter of law.

9

In his opposition, Vernon does not contend that he should be permitted to base his claim on the fall or address Defendants' argument at all. Excessive force cases must usually go to the jury, but summary judgment is appropriate if the court concludes, "after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994). Because Vernon testified that he did not remember going to Central Station, the evidence is unrebutted that Vernon fell of his own accord and Officer Perez was simply unable to catch the fall. Given those facts, no reasonable juror could conclude that Officer Perez used excessive force.

### B. Fifth, Ninth & Fourteenth Amendments

In his SAC, Vernon alleges that Defendants used excessive force, thereby violating his Fourth, Fifth, Ninth, and Fourteenth Amendment rights. Defendants argue that because excessive force claims should be analyzed under the Fourth Amendment only, Vernon's claim fails to the extent it is predicated on other constitutional provisions.

When a free citizen claims that law enforcement officials used excessive force in making an arrest, the claim is properly analyzed under the Fourth Amendment rather than under a substantive due process standard. See Graham v. Connor, 490 U.S. 386, 388 (1989). Defendants are therefore correct to argue that Vernon cannot proceed under a due process theory of liability.

In addition, Vernon cannot maintain his claim under the Ninth Amendment "because that amendment has not been interpreted as independently securing any constitutional rights for purposes of making out a constitutional violation." Schowengerdt v. United States, 944 F.2d 483, 490 (9th Cir. 1991).

Finally, although an equal protection claim may lie where the plaintiff is subjected to excessive force on the basis of race, see Smith v. City of Fontana, 818 F.2d 1411, 1420 (9th Cir. 1987), there is no evidence in the record that could support such a claim. Accordingly, the motion for summary judgment is granted to limit Vernon's excessive force claim to the Fourth Amendment, as applied to the states through the Fourteenth Amendment.

10

### III. Deliberate Indifference

In Count Seven, Vernon alleges that Defendants violated his due process rights by depriving him of urgently needed medical care. Claims of failure to provide care for serious medical needs, when brought by a detainee such as Vernon, are analyzed under the substantive due process clause of the Fourteenth Amendment. See Lolli v. County of Orange, 351 F.3d 410, 418-19 (9th Cir. 2003). To defeat Defendants' motion for summary judgment on this claim, Vernon must show that he was (1) confined under conditions posing a risk of objectively sufficiently serious harm, and (2) that the officials had a sufficiently culpable state of mind in denying the proper medical care. Id. at 419.

It is undisputed that Plaintiff was taken to a nurse at the County Jail just one and one half hours after the arrest. Even ignoring the fact that Vernon refused to accept treatment from the nurse, a delay of 1.5 hours in the receipt of pain treatment is insufficient to sustain a claim of deliberate indifference. See Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990) (holding that a delay of several days in receiving pain medication for a broken shoulder did not amount to a constitutional violation). "Although [Vernon's] treatment was not as prompt or efficient as a free citizen might hope to receive, [Vernon] was given medical care at the prison that addressed his needs." Id. at 1334. Accordingly, summary judgment is granted to Defendants on Count Seven.

### IV. Qualified Immunity

Officer Perez moves for summary judgment on Plaintiff's claims for unlawful seizure, excessive force, and deliberate indifference on the ground that he is entitled to qualified immunity. In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court established a two-prong analysis for qualified immunity cases. First, a court must determine whether – resolving all disputes of fact and credibility in favor of the party asserting the injury – the facts adduced at summary judgment show that the officer's conduct violated a constitutional right. Id. at 201. If the court determines that the conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity.

However, if the court determines that the conduct did violate a constitutional right, Saucier's second prong requires the court to determine whether, at the time of the violation, the constitutional right was "clearly established." Id. A right is clearly established if its "contours" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (citation omitted). Even if the violated right is clearly established, the Saucier Court recognized that, in certain situations, it may be difficult for a police officer to determine how to apply the relevant legal doctrine to the particular circumstances he faces. It held, therefore, that if an officer makes a mistake in applying the relevant legal doctrine, he is not precluded from claiming qualified immunity so long as the mistake is reasonable. That is, if "the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense." Id. at 205.

Because the Court grants the motion for summary judgment as to Vernon's claims for unlawful seizure and deliberate indifference, the request for qualified immunity is denied as moot as to those claims. As to Vernon's claim of excessive force – based on the alleged incident in the police van – Officer Perez is not entitled to qualified immunity.

Vernon has presented evidence that Officer Perez lifted Vernon's arm perpendicular to his body until it popped, despite the fact that Vernon was not resisting arrest and was suspected of only misdemeanors. To determine whether a specific use of force was reasonable, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (internal quotation marks omitted). Relevant factors to this inquiry include, but are not limited to, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. Here, viewing the evidence in the light most favorable to Vernon, all of the Graham factors weigh in favor of a finding of excessive force. Vernon was accused of committing relatively minor crimes, all misdemeanors. In addition, even the officers do not contend that Vernon posed a safety risk at the time of arrest. Finally, there is no evidence that Vernon was resisting arrest

at the time of the arrest. Under the circumstances, the alleged force used by Officer Perez was not reasonable.

Further, qualified immunity would be inappropriate because it was clearly established in 2005 that an officer cannot use excessive force in effectuating an arrest. See Graham v. Connor, 490 U.S. 386 (1989). Officer Perez fails to adequately explain how it would have been difficult to apply that legal doctrine to the circumstances that he faced.

### V. *Monell* Liability

Defendant City and County of San Francisco moves for summary judgment on all federal counts on the ground that Vernon has failed to adduce any evidence that would support Monell liability. Vernon does not oppose the motion, likely because it is true that there is no evidence in the record that would permit a juror to conclude that the City can be held responsible because Officer Perez was executing government policy or custom. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Accordingly, the City is removed as a defendant from all of Vernon's § 1983 claims.

### VI. Malicious Prosecution

Officer Perez moves for summary judgment on Vernon's fourth cause of action for malicious prosecution. The motion is granted because Officer Perez is statutorily immune from liability.

"Malicious prosecution consists of initiating or procuring the arrest and prosecution of another under lawful process, but from malicious motives and without probable cause. . . ." Sullivan v. County of Los Angeles, 12 Cal.3d 710, 720 (1974) (quotation and citation omitted) (emphasis in original). Under California law, a police officer may be held liable for false arrest and false imprisonment, but not for malicious prosecution. Section 821.6 of the California Government Code provides, "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

Vernon argues that there is a triable issue of material fact whether Officer Perez was acting within the scope of employment, but that is not so. "An employee acts within the

13

course and scope of employment when he is engaged in work he was employed to perform, or when the act is incident to his duty and is performed for the benefit of his employer, not to serve his own purposes or convenience." Richardson-Tunnell v. School Ins. Program for Employees, 157 Cal. App. 4th 1746, 1751 (2007). Although scope of employment is ordinarily a question of fact for the jury, the court may decide the question where only one reasonable inference can be drawn. Vernon alleges that Officer Perez committed malicious prosecution by accusing him of resisting arrest even though there was no probable cause to so believe. See SAC ¶ 44. Quite plainly, Officer Perez and his colleagues were engaged in the work for which they were employed to perform when they made out and signed police reports detailing the basis for the resisting arrest charges. Even if they were malicious in filling out such reports, immunity is appropriate because they did so pursuant to their work duties.

Even if Officer Perez were not statutorily immune, summary judgment would still be appropriate because Vernon has adduced no evidence of malice. Vernon failed to ask Officer Perez about his motives during Perez's deposition, and there is no other evidence that Officer Perez and his colleagues arrested Vernon for resisting arrest for an improper purpose.

VII. Assault

Defendants move for summary judgment on Vernon's first cause of action for assault, arguing that Vernon: (1) failed to properly exhaust the claim; and (2) failed to adduce any evidence of apprehension, a necessary element of an assault claim under California law. Although Vernon sufficiently exhausted his claim for assault, the motion is granted because the record is bereft of evidence that would support the conclusion Vernon was put in imminent apprehension of harmful or offensive conduct.

Defendants' first argument is that Vernon failed to comply with California Government Code § 945.4, which mandates, as a prerequisite to maintenance of an action against a public entity or its employees for damages arising out of an alleged tort, that the plaintiff first present a written claim to the public entity. Because the purpose of the statute is "to provide the public entity sufficient information to enable it to adequately investigate

14

claims and to settle them, if appropriate, without the expense of litigation," City of San Jose v. Superior Court, 12 Cal.3d 447, 455 (1974), the claim must "fairly describe what [the] entity is alleged to have done," Shoemaker v. Myers, 2 Cal. App. 4th 1407, 1426 (1992). Defendants argue that Vernon failed to fairly describe a claim of assault when he filed a claim alleging merely that "I was detained by Officer Perez for no resone [sic] and was injured by this officer while handcuffed in the back." Zaheer Decl. Exh. J.  However, "[o]nly where there has been a complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim, have courts generally found the complaint barred." Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth., 34 Cal.4th 441, 447 (2004) (internal quotation and citation omitted).  Here, Vernon properly presented his claim for assault by alleging that Officer Perez injured him because the claim involved the same acts and same parties as are involved in this litigation.

Defendants' second argument has more weight. Under California law, a plaintiff alleging assault must establish:  (1) that the defendant intended to cause harmful or offensive contact, or the imminent apprehension of such contact; and (2) that the plaintiff was put in imminent apprehension of such contact. See Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir. 2004).  Defendants contend that Vernon's claim for assault fails because the record contains no evidence that he was put in imminent apprehension of contact from Officer Perez.

A review of the record confirms that there is no evidence Vernon subjectively apprehended immediate harmful contact.[1]  Vernon testified that before Officer Perez allegedly pushed him into the police van, Officer Perez was positioned behind him. See Vernon Depo. at 101:5-7.  Vernon claims "it happened so fast," and he "just all of the sudden felt a shove and I was going." Id. at 101:10, 101:15-16.  Vernon argues that based on the events described, a reasonable person would not believe that the violence would cease.

---

[1] The element of apprehension is subjective, not objective; thus, even if an objectively reasonable person would have feared contact from Officer Perez under the circumstances, Vernon must establish that he so feared. See Restatement (Second) of Torts § 27 (1965).

15

But the question is not what a reasonable person would believe, but whether Vernon himself was in apprehension of additional contact or whether each act of alleged violence took Vernon by surprise. Based on Vernon's testimony, the only inference that can be drawn is that the alleged attack was so sudden that he did not apprehend the contact. While Vernon's testimony may be sufficient to sustain a claim of battery, the claim of assault must fail for lack of evidence of apprehension.

## CONCLUSION

Defendants' motion for partial summary judgment is granted in part and denied in part as follows: the motion is granted as to Vernon's claims for unjust seizure, malicious prosecution, deliberate indifference, assault, and excessive force insofar as the claim is predicated on the alleged fall or on the due process and equal protection clauses, and the Ninth Amendment. Further, the motion is granted as to Vernon's allegation of Monell liability. The motion is denied as to Vernon's claim for false arrest, and as to Officer Perez's invocation of qualified immunity. The hearing scheduled for August 29, 2008 is VACATED.

**IT IS SO ORDERED.**

Dated: August 25, 2008

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE